Filed 3/3/23  P. v. Barragan CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has California not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B317977 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA147961) |
| v. | |
| ANTONIO RAUL BARRAGAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Debra Cole-Hall, Judge.  Reversed and remanded.

Steven Schorr, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Wyatt E. Bloomfield and Michael C. Keller, Deputy Attorneys General for Plaintiff and Respondent.

———————————————

## INTRODUCTION

Defendant Antonio Raul Barragan appeals from his murder, robbery, and burglary convictions. He argues substantial evidence does not support his first degree murder conviction and the trial court committed sentencing errors. We affirm the murder conviction but remand for resentencing due to recent amendments to Penal Code section 1385..[1]

## FACTS AND PROCEDURAL BACKGROUND

### 1. *The Murder*

Shortly before 4:00 a.m. on February 15, 2018, defendant broke into a car stereo store in South Gate, where the victim (a store employee) was sleeping.[2] A security camera captured a soundless video of the incident. When defendant encountered the startled victim, defendant grabbed the victim's right shoulder. Pointing a gun, defendant moved the victim to a mattress where the victim remained kneeling. Defendant took the victim's wallet and appeared to speak with the victim. Defendant walked around the storefront, collected certain items, and placed them in a bag. Defendant, again while seemingly engaged in conversation with the victim, threw items onto the mattress. The victim then wiped the objects on his t-shirt and the mattress. Defendant proceeded to fire three shots into the victim's head. Defendant gathered the items and left the store. The encounter lasted almost nine minutes.

Around 4:00 a.m., a witness who lived in an apartment near the car stereo shop heard gunshots coming from the store's

---

[1] All further undesignated statutory references are to the Penal Code.

[2] Due to car trouble, the owner of the store allowed the victim to sleep overnight in the store.

direction.  After calling 911, the witness saw a man run down an alley adjacent to the store.

## 2.    *Police Investigation*

Police found the victim dead inside the store.  A medical examiner determined that the victim died from three gunshot wounds to the head.

A homicide detective obtained video from a surveillance camera located inside the store.  The video showed defendant's encounter with the victim as we have described it.  The detective also recovered and sent for DNA testing portions of the victim's clothing, which the killer had grabbed during the incident.  DNA analysis of two samples showed that it was, respectively, 11 trillion and 2.6 trillion times more likely to be defendant's DNA than the DNA of another person.

The detective also recovered surveillance footage from two nearby businesses.  The videos showed a GMC Yukon with a nonfunctional third tailgate light approach the area at 2:33 a.m. with its headlights out.  About 17 minutes before the shooting, the Yukon stopped adjacent to an alleyway near the car stereo store.  About seven to eight minutes into the video, a person exited the Yukon from the passenger side, and walked toward the car stereo store.  After the shooting, the same Yukon drove toward a freeway.  Police subsequently stopped a Yukon that matched the appearance of the Yukon in the videos.  A search of the vehicle produced a Glock 10 mm pistol.  Police arrested the driver/registered owner of the vehicle, codefendant Santiago Cuevas, who was defendant's cousin.

A firearms examiner tested the Glock 10 mm pistol found in the Yukon and confirmed it was the murder weapon.  A separate trigger pull with at least six pounds of pressure was required for each bullet that was discharged from the gun.

3

Police arrested defendant in early April 2018 based on his connection to Cuevas and other evidence.

### 3. *Information*

A third amended information charged defendant and Cuevas with murder (§ 187, subd. (a); count one), robbery (§ 211; count two) and second degree burglary (§ 459; count three). As enhancements to counts one and two, the information alleged that defendant personally used a firearm (§ 12022.53, subd. (b)), personally and intentionally discharged a firearm (§ 12022.53, subd. (c)), and personally and intentionally discharged a firearm causing death and great bodily injury (§ 12022.53, subd. (d)). For count three, the information alleged defendant personally used a firearm (§ 12022, subd. (a)(1)).~

Defendant pleaded not guilty and denied the allegations. On November 4, 2021, codefendant Cuevas pleaded no contest to all counts except for the murder, admitted the principal armed enhancement, and was sentenced to 17 years, 4 months in state prison. Defendant proceeded to trial.

### 4. *Trial and Sentencing*

At trial, the People presented testimony from the witness who heard the gun shots, the owner of the car stereo store, law enforcement, a medical examiner, a forensic specialist, and criminalists. Central to the People's case was the surveillance video of the shooting, admitted as exhibit 7. The defense rested without presenting evidence.

A jury found defendant guilty of first degree murder (§ 187, subd. (a)), robbery (§ 211), and burglary (§ 459). For the murder and robbery convictions, the jury found defendant personally and intentionally discharged a firearm that caused great bodily injury and death. For the burglary conviction, the jury found defendant personally used a firearm. Defendant admitted he had a prior

4

serious felony conviction under the Three Strikes law and section 667, subdivision (a)(1).

On December 2, 2021, defense counsel filed a request to dismiss defendant's prior "strike" conviction under section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*). At defendant's sentencing hearing, the trial court denied the request based on defendant's crimes and criminal record. We discuss this aspect of the proceedings in more detail below.

For the murder conviction, the trial court sentenced defendant to state prison for 75 years to life (25 years to life for the murder, doubled because of defendant's prior strike, with an additional 25 years to life for the section 12022.53, subdivision (d) firearm enhancement). The court imposed the upper term of five years to be served consecutively for the robbery conviction, doubled based on the prior strike. The court imposed and then stayed a consecutive term of eight months for the burglary conviction.[3]

Defendant appeals.

---

[3] Although not raised by the parties, the court erred in imposing and staying the one-third midterm sentence on the burglary conviction. " 'The one-third-the-midterm rule of section 1170.1, subdivision (a), only applies to a consecutive sentence, not to a sentence stayed under section 654.' (*People v. Cantrell* (2009) 175 Cal.App.4th 1161, 1164 . . . .) To effectuate section 654, the trial court must impose a full term and stay execution of that term." (*People v. Relkin* (2016) 6 Cal.App.5th 1188, 1198.) Because we are remanding, the trial court will have the opportunity to correct this part of the decision among its various sentencing options.

## *DISCUSSION*

Defendant makes two arguments on appeal. First, he argues we must reverse his conviction for first degree murder because "substantial evidence fails to establish he acted deliberately and with premeditation." Second, defendant raises two sentencing errors.

**1.** ***Substantial Evidence Supports Defendant's First Degree Murder Conviction***

Defendant does not challenge the sufficiency of the evidence that he shot and killed the victim. He contends, instead, that no substantial evidence supports the mens rea necessary for first degree murder. As his opening brief explains, there was an "absence of any meaningful evidence of planning activity related to the killing or a motive for committing it."

*a.* *Applicable Law*

"Review on appeal of the sufficiency of the evidence supporting the finding of premeditated and deliberate murder involves consideration of the evidence presented and all logical inferences from that evidence in light of the legal definition of premeditation and deliberation . . . . Settled principles of appellate review require us to review the entire record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—from which a reasonable trier of fact could find that the defendant premeditated and deliberated beyond a reasonable doubt." (*People v. Perez* (1992) 2 Cal.4th 1117, 1124.) "We determine whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.] In so doing, a reviewing court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the

6

evidence." (*People v. Morales* (2020) 10 Cal.5th 76, 88 [internal quotation marks omitted] (*Morales*).)

The jury convicted defendant of first degree murder based on a finding that the killing was willful, deliberate, and premeditated. "An intentional killing is premeditated and deliberate if it occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse. The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly." (*Morales, supra,* 10 Cal.5th at p. 88 [citations and internal quotation marks omitted].)

Our Supreme Court has said that "[t]he type of evidence which this court has found sufficient to sustain a finding of premeditation and deliberation falls into three basic categories." (*People v. Anderson* (1968) 70 Cal.2d 15, 26–27.) They are: (1) planning activity – "facts about how and what defendant did *prior* to the actual killing which show that the defendant was engaged in activity directed toward, and explicable as intended to result in, the killing"; (2) motive – "facts about the defendant's *prior* relationship and/or conduct with the victim from which the jury could reasonably infer a 'motive' to kill the victim"; and (3) manner of killing – "facts about the nature of the killing from which the jury could infer that the *manner* of killing was so particular and exacting that the defendant must have intentionally killed according to a 'preconceived design' to take his victim's life in a particular way for a 'reason'. . . ." (*Id.* at pp. 26–27.) These three categories provide a framework for appellate review. They are not exhaustive, nor is evidence in each category required to support a first degree murder conviction. (*Morales, supra,* 10 Cal.5th at pp. 88–89.)

7

### b.     *Substantial Evidence Supports the Conviction*

Here, evidence of planning, motive, and manner of killing supports the jury's finding that the killing was premeditated and deliberate.

***Planning.*** " 'In the context of first degree murder, premeditation means " 'considered beforehand' " [citation] and deliberation means a " 'careful weighing of considerations in forming a course of action . . . .' " [citation].  "The process of premeditation and deliberation does not require any extended period of time."  [Citation.]' "  (*People v. Salazar* (2016) 63 Cal.4th 214, 245.)

Defendant's decision to bring a loaded and fully functional firearm into the store he was about to burgle shows defendant was prepared for a violent encounter.  Wielding a loaded firearm may support the jury's inference of planning.  (See, e.g., *People v. Salazar, supra,* 63 Cal.4th at p. 245 ["defendant brought a loaded gun with him to the Beef Bowl, demonstrating preparation"].)  More proximate to this killing, the opening brief admits that, once the killer entered the car stereo shop, he was "interacting and apparently conversing with [the victim] for approximately eight minutes" when the killer suddenly raised and fired three shots into the victim's head.  The jury reasonably could have found that, with a loaded gun already in his possession, eight minutes was more than enough time to premeditate and deliberate, and then to shoot the victim in cold blood three times.

***Motive.***  Defendant's argument on motive suggests a pre-existing relationship between the defendant and the victim is often found to support a finding of motive.  This may be so.  (See, e.g., *People v. Winkler* (2020) 56 Cal.App.5th 1102, 1165 [evidence of wife's ongoing affair and impending divorce provide a strong motive for killing the victim].)  Here there was no pre-existing relationship, but that does not conclusively rule out motive.  Our

Supreme Court has repeatedly held that motive may be established when the defendant kills in order to avoid detection. (See, e.g., *People v. Hovarter* (2008) 44 Cal.4th 983, 1019 [jury could infer defendant killed victim to avoid detection for the crimes he committed against her]; *People v. Hughes* (2002) 27 Cal.4th 287, 371 [defendant had motive to eliminate victim who was a witness to his crime]; *People v. Pride* (1992) 3 Cal.4th 195, 247 [same].) Defendant was not masked, and the victim was in a position to see defendant's face clearly. The jury could have reasonably inferred that defendant killed the victim to complete the burglary and prevent his identification by the only eyewitness.

*Manner of killing.* The execution-style killing supported the jury's finding the murder was contemplated and deliberate. While the victim knelt in a submissive position on the mattress, posing no threat to defendant, defendant fired three gunshots into the victim's head. Defendant's method was exacting and particular – neither accidental nor in response to a threat from, or resistance, by the victim. The manner of the killing permitted the jury to infer defendant had acted pursuant to a preconceived plan, even if that plan was only formulated in the nearly nine minutes defendant spent with the victim prior to the murder. (See *People v. Gomez* (2018) 6 Cal.5th 243, 283 [that victims were shot from close range in the head or neck showed premeditation and deliberation]; *People v. Halvorsen* (2007) 42 Cal.4th 379, 422 [The victims "were shot in the head or neck from within a few feet, a method of killing sufficiently ' "particular and exacting" ' to permit an inference that defendant was 'acting according to a preconceived design' "].)

Defendant argues that, although he had a gun, he did not point it at the victim until shooting him and that having a gun did not indicate an intent to kill. Defendant also argues the manner of killing was sudden and unexpected, and thus not the

9

result of thoughtful contemplation. And, because the victim was not bound or blindfolded, the killing was not done execution style.

In belaboring the discussion on the presence or absence of specific details of planning, motive, and manner of the killing, defendant misses the point. The video of the killing, the DNA evidence linking defendant to the crime, and the totality of the evidence collectively constitute substantial evidence to support the verdict. That the jury could have given some weight to other factors does not compel acquittal.

## 2. *We Remand for Resentencing*

Defendant complains that, in imposing sentence, the trial court failed to acknowledge and exercise its discretion as defined in recent amendments to section 1385 and the Supreme Court's opinion in *People v. Tirado* (2022) 12 Cal.5th 688, 692 (*Tirado*). Defendant also asks us to correct clerical errors in the court's minutes and abstract of judgment, which incorrectly describe the firearm enhancement imposed but stayed for the burglary conviction.

### a. Recent Amendments to Section 1385

Defendant argues that, based on recent amendments to section 1385, the trial court abused its discretion by rejecting defendant's request to dismiss a prior "strike" conviction pursuant to *Romero*. The Attorney General acknowledges remand is appropriate because the trial court failed to apply the amended version of section 1385. We agree.

On January 1, 2022, Senate Bill 81 (2021–2022 Reg. Sess.) (Senate Bill No. 81) amended section 1385 "to specify factors that the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice." (*People v. Sek* (2022) 74 Cal.App.5th 657, 674.) The amended law lists nine mitigating circumstances, including: the existence of multiple enhancements in a single case, the

10

enhancement's application could result in a sentence of over 20 years, and the underlying prior conviction is over five years old. (§ 1385, subd. (c).) By its terms, proof of a single circumstance weighs greatly in favor of dismissing the enhancement unless dismissal would endanger public safety. (§ 1385, subd. (c)(2).)

Here, one month prior to the January 1, 2022 amendment to section 1385, defense counsel filed a request to dismiss defendant's prior "strike" conviction under section 1385 and *Romero*. Counsel argued that defendant's prior serious felony conviction under the Three Strikes law was 23 years old. Counsel did not mention the impending amendment to section 1385. At defendant's January 4, 2022 sentencing hearing, the trial court denied the request based on defendant's crimes and criminal record. Neither the trial court nor counsel referenced the then-effective amendment to section 1385.

Because the trial court did not consider the recent amendments to section 1385, we agree the case must be remanded for resentencing.

b. *The Trial Court's Discretion as Clarified by* People v. Tirado

Defendant also argues resentencing is necessary because the trial court did not know it had authority under the Supreme Court's decision in *Tirado, supra,* 12 Cal.5th at page 692 "to strike [a] section 12022.53[, subdivision (d) firearm] enhancement found true by the jury and to impose a lesser uncharged statutory enhancement instead." *Tirado* was filed 16 days *after* defendant's sentencing, so it is fair to say that no one, not the trial court, counsel nor anyone else was aware of *Tirado* when defendant was sentenced. Briefly, in its opinion, the Supreme Court addressed the three-tiered enhancement structure found in section 12022.53, subdivisions (b), (c), and (d). That section provides firearm enhancements of 10, 20, or 25 years for certain

11

felonies, based on the egregiousness of the firearm use. *Tirado* clarified that the trial court has the discretion under section 12022.53, subdivision (h) to impose a lesser 10- or 20-year enhancement in place of the 25-year enhancement. (*Tirado, supra,* 12 Cal.5th at p. 700.)

The Attorney General in its respondent's brief does not address defendant's *Tirado* argument one way or the other.

We need not weigh in on the applicability of *Tirado* to the present case. Because we remand for the trial court to consider the amendments to section 1385 when it imposes sentence, the trial court will also have the opportunity to consider *Tirado* in formulating that sentence. "At that hearing, the full resentencing rule, which 'allows a court to revisit all prior sentencing decisions when resentencing a defendant' [citation] applies." (*People v. Henderson* (2022) 14 Cal.5th 34, 56.)[4]

### DISPOSITION

We remand for the trial court to resentence defendant in light of the changes to section 1385. We affirm the judgment on all other grounds.

RUBIN, P. J.

WE CONCUR:

BAKER, J.                    MOOR, J.

---

[4] We do not address defendant's final argument about clerical errors in the minutes and abstract of judgment. The trial court will have the opportunity to correct any errors on remand.

12

The People v. Antonio Raul Barragan
B317977


BAKER, J., Concurring



I have signed the opinion for the court. I write separately to ensure the parties do not read too much into our discussion of *People v. Tirado* (2022) 12 Cal.5th 688, 692. Although that decision had not issued at the time sentence was imposed, there was Court of Appeal authority to the same effect on the books that the trial court could have opted to follow. (See, e.g., *People v. Morrison* (2019) 34 Cal.App.5th 217, 222-223.) So while nothing prohibits the defense from arguing on remand that some lesser firearms enhancement should be imposed, that argument was available to the defense at the already-held sentencing and we presume the trial court was aware of its discretion.



BAKER, J.


1